[No. D046686. Fourth Dist., Div. One. Nov. 9, 2005.]

In re SALVADOR M., a Person Coming Under the Juvenile Court Law.
SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY,
Plaintiff and Respondent, v.
DIANA G., Defendant and Appellant.

COUNSEL

Valerie N. Lankford, under appointment by the Court of Appeal, for Defendant and Appellant.

John J. Sansone, Susan Strom and Patrice Plattner-Grainger for Petitioner and Respondent.

Julie E. Braden, under appointment by the Court of Appeal, for Minor.

OPINION

**HUFFMAN, Acting P. J.**—Diana G., the mother of Salvador M., appeals the judgment terminating her parental rights pursuant to Welfare and Institutions Code section 366.26.[1] Diana contends the juvenile court erred by making inconsistent findings and failing to apply the sibling relationship exception to adoption (§ 366.26, subd. (c)(1)(E)).

### FACTUAL AND PROCEDURAL BACKGROUND

In May 2003, Diana gave birth to Salvador, her third child. Diana subsequently told hospital staff that she had used methamphetamine four days before the baby's birth. Although the baby tested negative for the presence of drugs in his system, a hospital hold was placed on him.

On May 20, 2003, the San Diego County Health and Human Services Agency (Agency) filed a dependency petition on behalf of Salvador, alleging

---

[1] All statutory references are to the Welfare and Institutions Code.

he was in need of the protection of the juvenile court because of the drug use of both his parents and his father's failure to protect. (§ 300, subd. (b).)[2]

On June 9, 2003, Diana submitted on the petition, and the juvenile court sustained the petition. The court declared Salvador a dependent of the court and placed him with the maternal grandmother, who was the legal guardian of Diana's son, Joseph G., who was five and one-half years older than Salvador. The court ordered Diana to participate in the Substance Abuse Recovery Management System (SARMS), undergo individual counseling and complete parenting classes.

Initially, Diana's participation in SARMS was poor; she had 13 instances of noncompliance by early October 2003, when she stopped using drugs and started services. It was reported that Salvador was happy living with his grandmother and his brother Joseph. Salvador also had regular contact with another brother, Raymond H., who was seven and one-half years older than Salvador and lived with his father.

On December 9, 2003, the court ordered six more months of services.

During the next six months, Diana was in compliance with SARMS and making progress in her individual therapy.

On June 10, 2004, the court ordered six more months of services. On July 23, Salvador was returned to Diana on a 60-day trial visit. However, on August 2, Diana tested positive for methamphetamine. Agency terminated the 60-day visit and placed Salvador back in the care of the maternal grandmother. After the 60-day visit was terminated, Diana's whereabouts became unknown.

On December 17, 2004, the court terminated reunification services and set a section 366.26 hearing.

In her adoption assessment report, social worker Jennifer Sovay opined that Salvador was generally adoptable because of his young age, good health, normal development and social ability and specifically adoptable because his caregivers, the maternal grandparents, wanted to adopt him. An adoptive home study for the maternal grandparents had been initiated, but not completed. Salvador had received excellent care from the grandparents, whom he called "mama" and "papa." Salvador and Joseph interacted well with each other and enjoyed a typical sibling relationship.

At the section 366.26 hearing on June 16, 2005, social worker Sovay testified that the home study had not yet been completed. Sovay expected the

---

[2] The father is not a party to this appeal.

grandparents' home to be approved; she did not know of any problems that would cause it to be disapproved. Sovay said the home study should be completed by the end of the summer. Sovay testified that in addition to the grandparents about 50 approved prospective adoptive families had indicated they would be willing to adopt a child with Salvador's characteristics. Sovay had not interviewed any of the 50 families regarding whether they would continue the sibling relationship between Salvador and Joseph.

After concluding that Salvador was likely to be adopted if parental rights were terminated, the juvenile court found that Salvador and Joseph had an "existing close and strong bond or attachment" and it was in Salvador's best interests to continue that bond. The court further found that if the maternal grandparents adopted Salvador the sibling bond exception to adoption (§ 366.26, subd. (c)(1)(E)) would not apply because Salvador would continue to live with Joseph in the grandparents' home; the sibling bond exception would apply only if the adoption by the maternal grandparents fell through and Salvador was adopted by one of the available 50 families. Ruling that the social worker's testimony predicting approval of the grandparents' home study was entitled to great weight, the court found there would be no interference with the sibling bond between Salvador and Joseph, and therefore adoption was in Salvador's best interests. The court terminated parental rights.

## DISCUSSION

Relying on the juvenile court's finding that Salvador and Joseph had a sibling relationship that was significant enough that Salvador would suffer detriment if the relationship were terminated, Diana contends the court erred by not applying the sibling bond exception to adoption (§ 366.26, subd. (c)(1)(E)) under two theories.

First, Diana maintains the court, which had acknowledged there would be a substantial interference with the sibling bond between Salvador and Joseph if someone other than the maternal grandmother adopted Salvador, had (1) no guarantee the grandmother—as opposed to one of the other 50 prospective adoptive families—would adopt Salvador and (2) improperly relied on speculative testimony by the social worker that the grandmother's home study would be approved.

Second, Diana claims that even if the maternal grandmother's home study was approved, the sibling relationship between Salvador and Joseph would still be at risk because the grandmother is merely Joseph's legal guardian and he is subject to removal.

With respect to Diana's first theory, we have revisited Agency's motion to augment the record on appeal to include a report that the grandmother's home study was completed and approved. In an addendum report filed below on September 8, 2005, Agency informed the juvenile court that the grandmother's adoption home study was completed and approved. Although we originally denied Agency's motion to augment, upon reflection, we grant the motion.[3]

Diana argues that augmenting the record in this fashion violates the rule prohibiting consideration of postjudgment evidence on appeal. (See *In re Zeth S.* (2003) 31 Cal.4th 396, 413 [2 Cal.Rptr.3d 683, 73 P.3d 541] (*Zeth S.*) [consideration of postjudgment evidence in appeal of termination of parental rights violates generally applicable rules of appellate procedure and express provisions section 366.26 circumscribing review of termination orders].)

■ In *Zeth S., supra,* 31 Cal.4th at pages 403–404, an appeal challenging the juvenile court's finding that the beneficial relationship exception to adoption did not apply, appellate counsel sought to augment the record on appeal with postjudgment evidence that the parent was currently interacting with the child and that the relative caretaker had felt pressured by the social services agency to agree to adopt. This information was presented for the first time through the unsworn statements of the minor's appointed appellate counsel in a letter brief. (*Id.* at pp. 400, 404–405.) In disavowing this practice, the Supreme Court was concerned that the Court of Appeal had taken what was in essence a substantial evidence issue and used new evidence to revisit the "mother-child relationship . . . a settled matter which, by statutory directive, could not be reopened for reconsideration by mother." (*Id.* at pp. 411–412.) The statutory scheme for juvenile dependency cases "does not authorize a reviewing court to substitute its own judgment as to what is in the child's best interests for the trial court's determination in that regard . . . . This is particularly true where [the postjudgment] evidence, in likelihood, would have been irrelevant and excludable had it been known and presented to the trial court in the first instance." (*Id.* at p. 410.)

*Zeth S.* is distinguishable from this case for a number of reasons. Here, the postjudgment evidence is a report by Agency filed with the juvenile court, not

---

[3] On September 23, 2005, we denied Agency's motion to augment the record by an order signed by the acting presiding justice. Because that ruling was not "a decision on the merits considered by a panel of three justices [and] ultimately acquiesced in by a majority," we can reconsider it. (*Delmonico v. Laidlaw Waste Systems, Inc.* (1992) 5 Cal.App.4th 81, 83, fn. 1 [6 Cal.Rptr.2d 599].) The effect of denying the augmentation request "was only to postpone a definitive decision on the issues presented . . . until the panel assigned to the case reviewed all the issues." (*Ibid.*) Once the merits panel was assigned to this case, we informed counsel that we would revisit Agency's motion to augment and provided counsel with the opportunity to submit supplemental briefing.

an unsworn statement of counsel. (*Zeth S., supra*, 31 Cal.4th at pp. 400, 407.) Second, the information that the grandmother's home study had been approved would not "have been irrelevant and excludable had it been known and presented to the trial court in the first instance." (*Id.* at p. 410.) Third, Agency did not seek to augment the record on appeal with new evidence to overturn an order terminating parental rights in contravention of the juvenile law's purpose of "expediting the proceedings and promoting the finality of the juvenile court's orders and judgment." (*Id.* at p. 413.)

█ Because Agency sought to augment the record on appeal in an attempt to demonstrate that Diana's appeal is moot and thereby have the appeal dismissed, this case is more like *In re Josiah Z.* (2005) 36 Cal.4th 664 [31 Cal.Rptr.3d 472, 115 P.3d 1133] (*Josiah Z.*) than *Zeth S., supra*, 31 Cal.4th 396. In *Josiah Z., supra*, 36 Cal.4th at pages 673 through 677, the child's appellate counsel sought to have a child dependency appeal dismissed based on counsel's assessment of the child's best interests. The Supreme Court held that it was proper for appellate counsel to do so and rejected the conclusion by the Court of Appeal that hearing a motion to dismiss the appeal based on counsel's assessment of the child's best interests would violate the *Zeth S.* proscription against postjudgment evidence on appeal. (*Josiah Z.* at p. 676.) The Supreme Court in *Josiah Z.* stated: "This conclusion reads too much into our holding in *Zeth S.* There, we held that for an appellate court routinely to solicit postjudgment evidence in order to reopen and reconsider trial court findings and reverse the trial court's judgment 'would violate both the generally applicable rules of appellate procedure, and the express provisions of section 366.26 which strictly circumscribe the timing and scope of review of termination orders, for the very purpose of expediting the proceedings and promoting the finality of the juvenile court's orders and judgment.' (*In re Zeth S.*, at p. 413.) For these reasons, an appellate court should not consider postjudgment evidence going to the merits of an appeal and introduced for the purposes of attacking the trial court's judgment. But these same concerns militate in favor of permitting motions to dismiss to be brought and heard, and distinguish this case from *Zeth S.* in three respects. █ First, the generally applicable appellate rules authorize such a motion, and appellate courts routinely consider limited postjudgment evidence in the context of such motions. (Cal. Rules of Court, rule 41(a)(2); see e.g., *TMS, Inc. v. Aihara* (1999) 71 Cal.App.4th 377, 378–379 [83 Cal.Rptr.2d 834]; *In re Melissa S.* (1986) 179 Cal.App.3d 1046, 1053–1054 [225 Cal.Rptr. 195].) Second, the limited issue involved in a motion to dismiss, whether a child should be permitted to abandon a challenge to the trial court ruling, is distinct from the broader issues resolved by the trial court, and consideration of circumscribed evidence in this context does not give rise to the vice we condemned in *Zeth S.*—an appellate court's use of new evidence outside the

record to second-guess the trial court's resolution of issues properly committed to it by the statutory scheme. (See *In re Zeth S.*, *supra*, at pp. 409–410.) Third, the beneficial consequence of motions to dismiss, where granted, will be to 'expedit[e] the proceedings and promot[e] the finality of the juvenile court's orders and judgment' (*id.* at p. 413)—precisely the policy advanced by our ruling in *Zeth S.*" (*Josiah Z.*, *supra*, at p. 676.)

■ Given these circumstances, we conclude it is proper to augment the record on appeal to include the addendum report, which discloses the grandmother's adoptive home study had been approved. The addendum report shows that Diana's first issue is indeed moot; the approval of her home study removed any uncertainty that the grandmother would adopt Salvador.

Having augmented the record on appeal in this case, we note that the better procedure for the juvenile court to have followed where it concluded the sibling relationship exception to adoption would not apply if the grandmother adopted Salvador but would apply if someone else adopted the child would have been to continue the hearing until the grandmother's home study had been completed. We agree with Diana that the court's reliance on the social worker's testimony that she thought the grandmother's home study would be approved was unwarranted because the testimony was speculation. That subsequent events bore out this speculation is little more than happenstance, which normally should not be the basis of court orders and judgments. However, given the approval of the grandmother's home study there is no reason to further delay Salvador's chance at stability and permanence in an adoptive home that will allow him to continue his sibling relationship with Joseph.

Alternatively, Diana maintains that even if the grandmother adopted Salvador, the sibling relationship between him and Joseph would still be at risk because the grandmother is merely the legal guardian of Joseph, who is subject to removal. We reject this theory as too speculative. At the time of the section 366.26 hearing, Joseph was more than seven years old—an age at which children are generally considered unlikely to be adopted. There was no evidence in the record that the grandmother and grandfather were too old or had other infirmities that might render them unable to continue as Joseph's guardian. Further, in the event that Diana would reunify with Joseph, there is nothing in this record to suggest that the brothers' relationship would be terminated, as both Diana and the grandmother have indicated they recognize the value of the sibling relationship.

## DISPOSITION

The judgment is affirmed.

McDonald, J., and McIntyre, J., concurred.